IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>METHYL METHACRYLATE (MMA)<br>ANTITRUST LITIGATION<br><br>——————————————————<br><br>THIS DOCUMENT RELATES TO:<br>DIRECT PURCHASER ACTIONS | Civil Action No. 06-md-1768<br><br>Hon. Timothy J. Savage<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER CLASS
PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES,
AND FOR INCENTIVE AWARD PAYMENTS FOR CLASS REPRESENTATIVES**

**BOLOGNESE & ASSOCIATES, LLC**
Anthony J. Bolognese
Joshua H. Grabar
1500 JFK Blvd., Suite 320
Philadelphia, PA 19102
Telephone: (215) 814-6750
Facsimile: (215) 814-6764
E-Mail: abolognese@bolognese-law.com

**HAUSFELD LLP**
Michael D. Hausfeld
William P. Butterfield
1700 K Street, N.W., Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
E-Mail: mhausfeld@hausfeldllp.com

**BERGER & MONTAGUE, P.C.**
H. Laddie Montague, Jr.
Ruthanne Gordon
1622 Locust Street
Philadelphia, PA 19102
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
E-Mail: hlmontague@bm.net

**FREED KANNER LONDON
 & MILLEN, LLC**
Steven A. Kanner
William H. London
2202 Waukegan Road, Suite 130
Bannockburn, IL 6001
Telephone: (224) 632-4500
Facsimile: (224)
E-Mail: skanner@fklmlaw.com

*Class Counsel for Direct Purchaser Class Plaintiffs*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 4

I.    Plaintiffs' Attorneys Should Be Awarded The Requested Fees ........................... 5

      A.    Plaintiffs' Request for Attorneys' Fees Falls Within
          The Range of Approval ........................................................................... 5

             1.    Size of the Fund Created and Number of Persons
                  Benefited ......................................................................................... 6

             2.    Presence or Absence of Substantial Objections ............................. 6

             3.    Skill and Efficiency of the Attorneys Involved ............................. 6

             4.    Complexity and Duration of the Litigation .................................... 7

             5.    Risk of Nonpayment ...................................................................... 8

             6.    Amount of Time Devoted to the Case by
                  Plaintiffs' Counsel .......................................................................... 9

             7.    Awards in Similar Cases ................................................................ 9

      B.    A Lodestar Cross-Check Demonstrates That The
          Fee Is Reasonable ................................................................................ 10

II.   The Request For An Award Of Expenses Incurred Is Reasonable ..................... 13

III.  The Request For Incentive Award Payments Is Fair And Reasonable ............... 14

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*In re ATI Technologies, Inc. Sec. Litig.*,
    No. 01-2541, 2003 WL 1962400 (E.D. Pa. April 28, 2004).........................................11

*In re Buspirone Patent Antitrust Litig.*,
    No. 01-MD-1410, slip op. (S.D.N.Y. Apr. 11, 2003).............................................12-13

*In re Cardizem CD Antitrust Litig.*,
    MDL 1278 (E.D. Mich. Nov. 26, 2006) ....................................................................12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)......................................................................................11

*In re Corel Corp. Sec. Litig.*,
    293 F. Supp.2d 484 (E.D. Pa. 2003) .........................................................................13

*In re Elec. Carbon Prods. Antitrust Litig.*,
    447 F. Supp.2d 389 (D. N.J. 2006) ...........................................................................15

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    No. 3:03-md-1542 (SRU), slip op. (D. Conn. May 9, 2007) .......................................12

*In re FAO, Inc. Sec. Litig.*,
    No. 03-942, 2005 WL 3801469 (E.D. Pa. May 20, 2005)...........................................10

*In re Fine Paper Antitrust Litig.*,
    751 F.2d 562 (3d Cir. 1984)........................................................................................8

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp.2d 423 (E.D. Pa. 2001) .........................................................................10

*In re Greenwich Pharm. Sec. Lit.*,
    No. 92-3071, 1995 WL 251293 (E.D. Pa. Aug. 26, 1995) ..........................................10

*In re Hydrogen Peroxide Antitrust Litig.*,
    No. 2:05-md-01682 (E.D. Pa. Jul. 14, 2009) ......................................................passim

*In re Ikon Office Solutions, Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000).............................................................................7, 14

*In re Ins. Brokerage Antitrust Litig.*,
    Civ. No. 04-5184, MDL Docket No. 1663, 2009 WL 411856 (D.N.J. Feb. 17, 2009) 15

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2004 WL 1221350 (E.D. Pa. Jun. 2, 2004) ................................ passim

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) .................................................................... 14

*In re Microcrystalline Cellulose Antitrust Litig.*,
    Master File No. 01-CV-111, MDL No. 1402, slip op. (E.D. Pa. Nov. 22, 2006). 3, 9, 15

*In re Motorsports Merch. Antitrust Litig.*,
    112 F. Supp.2d 1329 (N.D. Ga. 2000) ....................................................... 8

*In re NBR Antitrust Litig.*,
    No. 03-1898, slip op. (W.D. Pa. June 1,  2006) ........................................ 12

*In re Plastic Additives Antitrust Litig.*,
    Master Docket No. 03-CV-2038, MDL Docket No. 1684) (E.D. Pa. Oct. 8, 2007) .... 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d at 329 n.96 .................................................................................. 12

*In re Quantum Health Res., Inc. Sec. Litig.*,
    962 F. Supp. 1254 (C.D. Cal. 1997) .......................................................... 8

*In re Ravisent Technologies, Inc. Sec. Litig.*,
    No. 00-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ....................... 9, 11

*In re Relafen Antitrust Litig.*,
    Master File No. 01-12239 (D. Mass. Apr. 9, 2004) .................................. 12

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ...................... 10, 16

*In re Rent-Way Sec. Litig.*,
    305 F. Supp.2d 491 (W.D. Pa. 2003) ................................................ 6, 8, 11

*In re Residential Doors Antitrust Litig.*,
    MDL No. 1039, Civ. A. Nos. 94-3744, 96-2125, 1998 WL 151804
    (E.D. Pa. Apr. 2, 1998) ............................................................................ 16

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................ 10, 11

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 99-MDL-1317 (S.D. Fla. Apr. 19, 2005) ...................................... 12, 16

*In re Unisys Corp. Sec. Litig.*,
   No. 99-5333, 2001 U.S. Dist. LEXIS 20160 (E.D. Pa. Dec. 6, 2001) .......................... 14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................................................... 12

*Lazy Oil Co. v. Witco Corp.*,
   95 F. Supp.2d 290 (W.D. Pa. 1997) ............................................................................ 9

*Meijer, Inc. v. 3M, Inc.*,
   No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ........................... 11, 13, 16

*Nichols v. SmithKline Beecham Corp.*,
   No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ......................... passim

*Robinson v. Nussbaum*,
   11 F. Supp.2d 1 (D.D.C. 1997) ................................................................................... 8

*Smith v. Grayling Corp.*,
   No. 07-1905 (E.D. Pa. Sept. 4, 2008) .................................................................. 5, 14

Pursuant to the Court's Order dated June 24, 2009 (Docket No. 175), Direct Purchaser Class Plaintiffs ("Plaintiffs"), by their undersigned counsel, respectfully submit this memorandum of law in support of their motion for approval an award of attorneys' fees and reimbursement of expenses and for incentive award payments to the class representatives.

## INTRODUCTION

Since its inception in January 2006, this litigation has been aggressively litigated and vigorously contested. The history of this litigation and the extensive efforts of plaintiffs' counsel are detailed in the Joint Declaration Of Plaintiffs' Co-Lead Class Counsel In Support Of Plaintiffs' Motion For (1) Final Approval Of The Proposed Settlements With All Defendants And Proposed Distribution Of Approved Settlement Funds; And (2) An Award Of Attorneys' Fees And Reimbursement Of Expenses, And For Incentive Award Payments ("Declaration of Counsel" or "Joint Decl."), filed concurrently herewith.

As a result of the efforts of Plaintiffs' counsel, the following settlements, totaling $15,150,000, were achieved with all of the defendants (the "Settling Defendants") and have been preliminarily approved by the Court by Order dated June 24, 2009 (Docket No. 175):

(1)      With defendants Evonik Degussa Gmbh (f/k/a Degussa Ag,); Evonik Degussa Corporation (f/k/a Degussa Corporation); Röhm Gmbh & Co. Kg; Röhm Americas, LLC (n/k/a CYRO Industries); CYRO Industries and Cytec Industries, Inc. (the "Degussa Defendants"), for $7,000,000;

(2)      With defendant Lucite International, Inc. (f/k/a Ineos Acrylics, Inc.) (the "Lucite"), for $7,050,000;

(3)      With defendants Arkema, Inc. (f/k/a Atofina Chemicals, Inc. and Elf Atochem North America, Inc.); Arkema France (f/k/a Arkema, S.A., Atofina S.A. and Elf Atochem S.A.); and Altuglas International (the "Arkema Defendants"), for $550,000; and

(4)     With defendant Imperial Chemical Industries Limited ("ICI"), for $550,000.[1]

The proceeds from these settlements have already been paid by the Settling Defendants and deposited in escrow accounts, where they are invested in a United State Treasury money market fund.  The settlements, which the Court preliminarily approved, represent a fair and reasonable recovery and a fitting and responsible conclusion to this litigation.  The settlements were obtained after prolonged and difficult, separate negotiations with each of the Settling Defendants, each of which is a large, sophisticated, multinational corporation with significant resources at its disposal, and is represented by highly capable, aggressive, and experienced counsel.

Plaintiffs' counsel have not received any payment for their more than three and a half years of services in conducting this litigation and have both advanced and incurred substantial out-of-pocket costs associated with the prosecution of this litigation.  Plaintiffs therefore request an award of attorneys' fees and reimbursement of expenses.

By Order dated June 24, 2009, (Docket No. 175), the Court granted the Direct Purchaser Class Plaintiffs' Motion for Preliminary Approval of the Proposed Settlements With All Defendants (Docket No. 172) (the "Notice Order"), and notice of the settlements was disseminated soon thereafter to class members (the "Notice").  Class Counsel have disseminated and published notice in accordance with the Notice Order.  *See* Affidavit of Edward J. Sincavage, CPA Regarding Dissemination of Notice of Distribution of Approved Settlement Funds and Claim Form and Application for an Award of Attorneys' Fees and Expenses (Docket No. 177) ("Sincavage Affidavit") and the Affidavit of Erin Ostenson (the "WSJ Affidavit"),

---

[1]     Imperial Chemical Industries Limited is the successor in interest to Defendant Imperial Chemical Industries plc.  Defendant ICI Acrylics, Inc. was sold to Ineos Acrylics, Inc. on November 1, 1999.

which is attached to the Notice of Filing of Affidavit of Publication in Wall Street Journal of the Notice of Distribution of Approved Settlement Funds and Claim Form and Application For an Award of Attorneys' Fees and Expenses (Docket No. 178). The Sincavage Affidavit and WSJ Affidavit were both filed on August 24, 2009. *See* Docket Nos. 177, 178.

Plaintiffs request that the Court award attorneys' fees equal to 30% of the approved settlement amount and award $1,315,645.91 for the reimbursement of expenses that were reasonably incurred in prosecuting this litigation. The Notice, as disseminated and published, advised class members of Class Counsel's anticipated fee request, request for reimbursement of expenses, and of Class Counsel's anticipated request for Court approval of incentive awards for the plaintiff class representatives. *See* Sincavage Affidavit, Exhibit A (Docket No. 177) at p. 3.

The Notice was widely disseminated to class members, both by direct mailing (*see* Sincavage Affidavit, ¶¶ 4-5, Docket No. 177), publication in the relevant trade press (*Id.*, ¶ 6), and in the Nation edition of the *Wall Street Journal*. *See* WSJ Affidavit, Docket No. 178.).

The deadline for the filing of objections was August 31, 2009, *See* Preliminary Approval Order, ¶ 17 (Docket No. 175). There have been no objections, either to the settlements, or to Class Counsel's request for fees and expense, and request for incentive award payments for the class representatives.

Plaintiffs respectfully submit that the requested fee is appropriate given the nature and extent of counsel's efforts in creating a substantial settlement in this hard-fought litigation and the litigation risks that exist in this case. Viewed on a percentage basis, the requested fee of 30% of the total settlement amount is well within the range of awards approved by this Court as well as others in this Circuit. *See, e.g., In re Microcrystalline Cellulose Antitrust Litig.*, Master File No. 01-CV-111, MDL No. 1402, slip op. (E.D. Pa. Nov. 22, 2006) (O'Neill, J.) (Exhibit A

hereto) (approving counsel fees of 33$^{1/3}$ % of the settlement fund); *In re Hydrogen Peroxide Antitrust Litig.*, slip op., No. 2:05-md-01682 (E.D. Pa. Jul. 14, 2009) (Dalzell, J.) (Exhibit B hereto) (approving counsel fees of 30% of settlement fund).

Plaintiffs further request that the Court award incentive award payments to the six named plaintiffs in the amount of $10,000 each.   Plaintiffs respectfully submit that the requested incentive awards are fair and reasonable, in light of the considerable time and effort undertaken by the named plaintiffs in this litigation.  *See In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *18-19 (E.D. Pa. Jun. 2, 2004) (DuBois, J.) (stating that "[l]ike the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly" and noting the effort of class representatives in advancing the litigation).

Accordingly, Plaintiffs and Class Counsel respectfully request that the Court enter an Order granting their motion, awarding the requested attorneys' fees and expenses, awarding the requested incentive awards and, in accordance with applicable precedent, authorizing Class Counsel to distribute the attorneys' fees and expenses in a manner that, in the opinion of Class Counsel, fairly compensates each firm in view of its contribution to the prosecution of Plaintiffs' claims.

## ARGUMENT

The background and procedural history of this litigation is detailed in the Declaration of Counsel, filed concurrently herewith.  Plaintiffs respectfully submit that all of the relevant facts and circumstances support the award of attorneys' fees, reimbursement of expenses and award of incentive fees requested herein.

I.      **Plaintiffs' Attorneys Should Be Awarded The Requested Fees**

      A.      **Plaintiffs' Request for Attorneys' Fees Falls Within The Range of Approval**

Where, as here, a common fund has been recovered for the benefit of an identified plaintiff class, plaintiffs' counsel are entitled, upon motion and notice to the class, to an award of attorneys' fees and reimbursement of litigation expenses to be paid from the settlement fund created in such amounts as the Court may approve. *See Smith v. Grayling Corp.*, No. 07-1905, slip op. at *3 (E.D. Pa. Sept. 4, 2008) (Savage, J.) (citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)) ("Attorneys who create a settlement fund of benefits for class members by virtue of their efforts are entitled to be compensated for their services from that fund.") (Exhibit C hereto).

In determining what percentage fee is appropriate, courts in this Circuit consider seven factors:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Plaintiffs' Counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see also In re Hydrogen Peroxide Antitrust Litig.*, No. 2:05-md-01682, slip. op. at *2 n.1 (E.D. Pa. Jul. 14, 2009) (Exhibit B hereto). These factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *Id.* As discussed below, it is respectfully submitted that the application of the *Gunter* factors to this case supports the requested fee.

### 1.   Size of the Fund Created and Number of Persons Benefited

Through the efforts of Plaintiffs' counsel in achieving the four settlements, $15,150,000 has been obtained for members of the Settlement Classes.  As set forth in the memorandum in support of final approval of the settlements, each of the settlements provides an excellent recovery for purchasers of MMA and Acrylic Products from defendants, particularly in light of the complexity, duration, and expense of ongoing litigation and the risk of establishing liability and damages.

### 2.   Presence or Absence of Substantial Objections

Plaintiffs' intention to seek attorneys' fees as well as the reimbursement of expenses was widely disseminated and published as directed by the Court.  *See* Sincavage Affidavit at ¶¶ 4-7; WSJ Affidavit.  Any objection to the fee and expense request was required to be filed on or before August 31, 2009.  *See* Preliminary Approval Order (Docket No. 175), at ¶17.  As of the date of this application, well past the deadline set by the Court, Plaintiffs' counsel have not received any objections.  An absence of substantial objections is a significant indicator of the reasonableness of the fee request.  *See In re Hydrogen Peroxide Antitrust Litig.*, No. 2:05-md-01682, slip op. at 2 n.1, (E.D. Pa. Jul. 14, 2009) (Dalzell, J.) (stating, in evaluating the *Gunter* factors, that "[t]he absense of *any* objection by these highly sophisticated class members is also truly notable.") (emphasis in original) (Exhibit C hereto)*; In re Rent-Way Sec. Litig.*, 305 F. Supp.2d 491, 515 (W.D. Pa. 2003) ("[T]he absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request.").

### 3.   Skill and Efficiency of the Attorneys Involved

The skill and efficiency of the attorneys involved is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience

and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, at *22 (E.D. Pa. Apr. 22, 2005) (Padova, J.) (quoting *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)).  Here, Class Counsel achieved settlements and litigated this action thoroughly and efficiently, worked cooperatively with counsel for the defendants to resolve many discovery and other discovery disputes that sometimes stall and bog down complex litigation of this type.

As discussed in more detail in the Declaration of Counsel, this case has presented numerous challenges to plaintiffs.  For example, both sufficiency of the pleadings and class certification have been hotly contested.  (Joint Decl. at ¶¶ 26-47.)  This is not a case where a recovery was assured.  That such significant overall settlements were obtained attests to the skill of Plaintiffs' counsel.

As has already been extensively briefed in connection with plaintiffs' motion for class certification (Docket No. 85), plaintiffs' counsel are extremely experienced in complex class action litigation and in antitrust disputes in particular.  Further, defendants have been well-represented by pre-eminent defense counsel from large, resourceful law firms, with decades of experience litigating antitrust actions.

### 4.   Complexity and Duration of the Litigation

This case has involved extensive efforts by plaintiffs' counsel over a period of over three and a half years, as reflected in the more than 175 entries in Docket No. 06-md-01768.  As detailed in the Declaration of Counsel filed concurrently herewith, plaintiffs' counsel's work has included, among other things: the investigation of claims; the briefing of motions, including the motion for class certification and multiple motions to dismiss; discovery, including reviewing

and organizing hundreds of thousands of pages of documents produced by defendants, as well as reviewing a database containing more than one million additional pages of documents produced by the Degussa Defendants under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat. 665 (2004), and taking and defending depositions; consultation with experts; and negotiation of the settlements and requests for settlement approval. "As to the complexity of the case, 'an antitrust class action is arguably the most complex action to prosecute.' ... 'The legal and factual issues involved are always numerous and uncertain in outcome.'" *Linerboard*, 2004 WL 1221350, at *10 (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp.2d 1329, 1337 (N.D. Ga. 2000)). This case is no exception.

### 5. <u>Risk of Nonpayment</u>

Plaintiffs' counsel faced a substantial risk of nonpayment in this case. The severity of the risk is to be measured at the time the litigation was commenced. *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984). As an initial matter, Plaintiffs' counsel undertook this action on a wholly contingent basis, taking on significant risk with the possibility of no recovery. *See In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29162, at *25 (E.D. Pa. Oct. 13, 2004) (Surrick, J.) (citing *Robinson v. Nussbaum*, 11 F. Supp.2d 1, 5 n.8 (D.D.C. 1997)); *In re Quantum Health Res., Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997).

In addition, Plaintiffs' counsel have continued to advance and incur expenses, which would not have been reimbursed absent a successful result. *See Rent-Way*, 305 F. Supp.2d at 516 ("Aside from investing their time, counsel had to front copious sums of money... in order to prosecute this litigation in a responsible fashion... Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). From the inception of this case in January 2006 through August 2009, the time period for which Plaintiffs'

are seeking expenses in this application), Plaintiffs' counsel have incurred $1,315,645.91 in unreimbursed amounts to prosecute the litigation. (Declaration of Counsel at ¶¶ 103-105.)

**6.       Amount of Time Devoted to the Case by Plaintiffs' Counsel**

Plaintiffs' counsel have spent a significant amount of time working on this case since the inception of the litigation in 2006. *See generally* Joint Decl. At their historical rates (i.e., at the rates that applied during the over three year course of this litigation), this would result in a total lodestar of $8,563,926.75. (Joint Decl. at ¶ 88). This factor also counsels in favor of awarding the requested fees. *See Lazy Oil Co. v. Witco Corp.*, 95 F. Supp.2d 290, 323 (W.D. Pa. 1997) ("In addition to noting the vast amount of work which was required in prosecuting this case, we also note Class Counsel's representation that their involvement in this litigation required them to abstain from working on other matters.").

**7.       Awards in Similar Cases**

The fee requested by Plaintiffs—30% of the recovery achieved—is a reasonable amount that falls within the range of amounts approved by this Court in similar cases. *See, e.g., Microcrystalline Cellulose*, MDL No. 1402, slip op. (Exhibit A hereto) (approving counsel fees of $33^{1/3}$ % of the settlement fund); *Hydrogen Peroxide Antitrust*, No. 2:05-md-01682, slip op. at 2, (E.D. Pa. Jul. 14, 2009) (Exhibit B hereto) (approving counsel fees of 30% of $10 million settlement fund).

Indeed, "courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." *In re Ravisent Technologies, Inc. Sec. Litig.*, No. 00-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (Surrick, J.); *see also Linerboard*, 2004 WL 1221350, at *16 (approving fee of 30% of settlement fund); *Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162, at *29 (approving fee of approximately 32% of settlement fund); *In re*

*Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 WL 3008808, at *13 n.1 (D.N.J. Nov. 9, 2005) (awarding fees of 33 1/3% from $75 million settlement fund); *In re FAO, Inc. Sec. Litig.*, No. 03-942, 2005 WL 3801469, at *2 (E.D. Pa. May 20, 2005) (Baylson, J.) (awarding fees of 30% and 33%); *Godshall v. Franklin Mint Co.*, No. 01-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (Rufe, J.) (awarding a 33% fee and noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp.2d 423, 433-34 (E.D. Pa. 2001) (awarding 1/3 of a $48 million settlement fund); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (an "award of one-third of the fund for attorneys' fees is consistent with fee awards" by district courts in the Third Circuit); *In re Greenwich Pharm. Sec. Lit.*, No. 92-3071, 1995 WL 251293, at *6 (E.D. Pa. Aug. 26, 1995) (Newcomer, J.) (holding that "a fee award of 33.3 percent is in line with the fee awards approved by other courts.").

Accordingly, the fee requested here—30% of the recovery achieved—is well within the range of other awards in similar cases and, based on an analysis of the *Gunter* factors, is justified given the contribution of Plaintiffs' counsel to the result achieved.

**B.     A Lodestar Cross-Check Demonstrates That The Fee Is Reasonable**

The reasonableness of the fee requested is further demonstrated by a lodestar cross-check. "Consideration of multipliers used in comparable cases may be appropriate" to gauge the reasonableness of a percentage fee award. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 n.17 (3d Cir. 2005). Importantly, however, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *Id. See also In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001) ("The lodestar cross-check, however, is very time consuming.

Thus, while the Court should in the first instance test the presumption, if challenged, by the *Gunter* factors, it may, if necessary, utilize the lodestar cross-check.").

Multipliers of up to four are frequently awarded in common fund cases. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (multiplier of 6.96) (Dalzell, J.); *Meijer, Inc. v. 3M, Inc.*, No. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (4.77 multiplier) (Padova, J.); *Nichols*, 2005 WL 950616, at *24 (3.15 multiplier); *Ravisent*, 2005 WL 906361, at *12 (3.1 multiplier); *Caracallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 256 (D.N.J. 2005) (2.83 multiplier);; *In re ATI Technologies, Inc. Sec. Litig.*, No. 01-2541, 2003 WL 1962400, at *2 (E.D. Pa. April 28, 2004) (Dalzell, J.) (multiplier of 2.35); *Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162, at *35 (2.3 multiplier is "within an acceptable range"); *Linerboard*, 2004 WL 1221350, at *16 (2.66 multiplier); *Rent-Way*, 305 F. Supp.2d at 517 (2.36 multiplier).

Here, the cumulative lodestar value of the time of all Plaintiffs' counsel that has been submitted to Class Counsel based on historical rates is $8,563,926.75.[2]   (Joint Decl. at ¶ 86).

---

[2]    Each Plaintiff's law firm has submitted to Class Counsel a signed declaration setting forth the total hours expended and the lodestar for each partner, associate and paralegal, calculated on an historical basis. (Joint Decl. at ¶ 88.)   The declarations submitted to Class Counsel by each firm also contain the total expenditures, broken down by category of major expenditure, incurred by the various law firms for the direct purchaser plaintiffs in connection with the prosecution of this litigation.  (*Id.*).  Class Counsel submit these declarations for the Court's review in the accompanying compendium of declarations filed concurrently herewith.

Class counsel are submitting these declarations to the Court as they were submitted to Class Counsel by the various attorneys and law firms who participated as counsel for Plaintiffs in this direct purchaser action.  As set forth herein, in accordance with prevailing authority, seek leave to distribute any fees that may be awarded by the Court in a manner which, in the opinion of Class Counsel based on their first hand experience in managing the litigation, fairly compensates each firm in view of Class Counsel's qualitative assessment of each firm's actual contribution to the prosecution of Plaintiffs' claims.  In making this assessment the time and loadstar reported by each firm will be considered by Class Counsel among many other qualitative factors that will be considered in connection with Class Counsel's qualitative

Thus, the requested attorneys' fee award of $4,545,000 does not represent any multiplier at all, but rather a "negative multiplier" of approximately .53 of total reported lodestar, *id.*, which is below the prevailing multipliers awarded by the Courts in cases of this type. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63629, at *6 (E.D. Pa. Jan. 3, 2008) (Surrick, J.) ("Since the multiplier is less than 1 (a 'negative lodestar') and the requested fee is less than the amount that would be awarded using the lodestar method, we are satisfied that a lodestar cross-check confirms that the requested fee percent is fair and reasonable.").

Accordingly, a lodestar cross-check further evidences the reasonableness of the requested fee.[3]

---

assessment of all participating counsel's contribution to the litigation in determining a fair and reasonable allocation of fees among counsel.

[3]     Class Counsel also request the Court to authorize them to distribute the fees in a manner which, in the opinion of Class Counsel, based on their first hand experience in managing the litigation, fairly compensates each firm in view of Class Counsel's qualitative assessment of each firm's contribution to the prosecution of plaintiffs' claims. *See Hydrogen Peroxide,* Civ. A. No. 2:05-md-01682, slip. op. (E.D. Pa. Jul. 14, 2009) (Exhibit B hereto); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (affirming the District Court's decision to permit attorneys' fees to be divided according to the discretion of the co-chairs of the Executive Committee and declining to "deviate from the accepted practice of allowing counsel to apportion fees amongst themselves") (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 329 n.96 ("The court need not undertake the difficult task of assessing counsels' relative contributions")). *See generally Linerboard,* 2004 WL 1221350, at *18, *order amended by* 2004 WL 1240775 (E.D. Pa. June 4, 2004) (granting liaison counsel authority to apportion attorneys' fees because liaison counsel was in the best position to "describe the weight and merit of each [counsel's] contribution") (internal quotations omitted); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2004 U.S. Dist. LEXIS 29162 (E.D. Pa.  Oct. 13, 2004) (Exhibit D hereto); *In re NBR Antitrust Litig.*, No. 03-1898, slip op. (W.D. Pa. June 1, 2006) (Exhibit E hereto); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, No. 3:03-md-1542 (SRU), slip op. (D. Conn. May 9, 2007) (Exhibit F hereto); *In re Plastic Additives Antitrust Litig.*, Master Docket No. 03-CV-2038, MDL Docket No. 1684), slip op. (E.D. Pa. Oct. 8, 2007) (Exhibit G hereto); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317, slip op. (S.D. Fla. Apr. 19, 2005) (Exhibit H hereto); *In re Relafen Antitrust Litig.*, Master File No. 01-12239, slip op. (D. Mass. Apr. 9, 2004) (Exhibit I hereto); *In re Cardizem CD Antitrust Litig.*, MDL 1278, slip op. (E.D. Mich. Nov. 26, 2006) (Exhibit J hereto); *In re Buspirone Patent Antitrust Litig.*, No. 01-MD-1410, slip op. (S.D.N.Y. Apr. 11, 2003) (Exhibit K hereto); *In re Linerboard Antitrust Litig.,* MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *54 (E.D. Pa. June

**II.     The Request For An Award Of Expenses Incurred Is Reasonable**

Plaintiffs have been litigating this case vigorously for over three and one half years. During that period of time, Plaintiffs' counsel have incurred expenses totaling $1,315,645.91. (Joint Decl. at ¶ 103.)   These expenses include costs for experts, court reporters, travel, photocopying, overnight mail, process service fees, long distance telephone and electronic research.  These expenses were reasonable and necessary to the litigation of this case.  A further description of the general nature of these expenses is set forth at ¶104-105 of the Joint Declaration of Class Counsel filed concurrently herewith, as well as in the separate submission made by class counsel under seal providing yet further detail concerning these expenses.

As such, Plaintiffs' counsel seek entry of an Order awarding them reimbursement of these expenses incurred during the litigation.  As discussed above, members of the Settlement Classes were informed in the recently published and mailed notices that Plaintiffs would be making a request for the reimbursement of expenses in an amount not to exceed $1.5 million (*see* Sincavage Affidavit, Exhibit A (Docket No. 177) at p. 3, and there has been no objection to this request.

"Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *Nichols*, 2005 WL 950616, at *24 (quoting *In re Aetna, Inc. Sec. Litig.*, No. MDL 1219, 2001 WL 20928, at *13 (E.D. Pa. Jan. 4, 2001)); *see also Meijer*, 2006 WL 2382718, at *33 (granting plaintiffs' motion for approval of expenses "incurred in connection with the prosecution and settlement of the litigation, and included costs related to the following: travel; computerized legal research; copying; postage;

_____

2, 2004) (approving joint fee petition with specific allocations to be determined by liaison counsel).

telephone and fax; transcripts; retention of a mediator; the document database; expert services; and claims administration."); *In re Corel Corp. Sec. Litig.*, 293 F. Supp.2d 484, 498 (E.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund.") (quoting *Ikon*, 194 F.R.D. 166); *In re Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 U.S. Dist. LEXIS 20160, at *12 (E.D. Pa. Dec. 6, 2001).

Accordingly, plaintiffs respectfully request that the Court grant Plaintiffs' request for $1,315,645.91 for the reimbursement of incurred litigation expenses.

**III.     The Request For Incentive Award Payments Is Fair and Reasonable**

Plaintiffs request incentive award payments in the amount of $10,000 for each of the six named plaintiffs (the "Class Representatives"), for a total of $60,000, from the settlement fund. The Class Representatives spent a significant amount of time and effort litigating these cases for the benefit of the absent members of the Settlement Classes.  These awards would recognize that the active engagement of each of the lead plaintiffs was critical to the result achieved.  *See, e.g. In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are 'not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.'").

Each Class Representative was deposed by defense counsel and assisted in responding to the multiple interrogatories and requests for production proffered by Defendants, among other things.  *See* Declaration of Counsel at ¶¶65-66.[4]  *See Smith v. Grayling Corp.*, No. 07-1905, 2008 WL 3861286, at *1-*3 (E.D. Pa. Aug. 20, 2008) (Savage, J.) (finding that the class

---

[4]     Each Class Representative provided verified answers to interrogatories and produced documents in response to document requests.  Additionally, each Class Representative expended considerable time preparing for, and then giving, testimony in depositions.

representative was "burdened in providing information to Class Counsel and taking the initiative to bring the action"); *Linerboard*, 2004 WL 1221350, at *18 ("Like the attorneys in this case, the class representatives have conferred benefits on all other members of the class and they deserve to be compensated accordingly."); *Nichols*, 2005 WL 950616, at *24 ("[i]t is particularly appropriate to compensate named representative plaintiffs with incentive awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class"). Moreover, the Class Representatives not only conferred benefits on all members of the Settlement Classes, but also risked jeopardizing their existing relationships with their suppliers of MMA and/or PMMA. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008) (citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)) (explaining that courts routinely approve incentive awards for the services class representative provide and the risks they incur during the course of the litigation, including risking relationships with suppliers). The requested incentive awards were set forth in the disseminated notices, *see* Sincavage Affidavit, and no objection has been received regarding the proposed awards.

Additionally, the requested incentive award of $10,000 per Class Representative is similar to awards granted by other courts in similar cases. *See, e.g. In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04-5184, MDL Docket No. 1663, 2009 WL 411856, at *10 (D. N.J. Feb. 17, 2009) (approving incentive payments of $10,000 to each of the 32 named plaintiffs, for an aggregate incentive award of $320,000 out of a $69 million settlement fund); *Auto. Refinishing*, 2008 WL 63269, at *7 (approving incentive awards of $30,000 for each of the four class representatives); *Microcrystalline Cellulose Antitrust Litig.*, MDL No. 1402, slip op. (E.D. Pa. Nov. 22, 2006) (Exhibit A hereto) (approving incentive awards of $25,000 to each of the eight

class representatives); *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp.2d 389, 412 (D. N.J. 2006) (finding "where extensive discovery efforts were required of the class representatives and a benefit was conferred by those efforts upon the class as a whole, such incentive awards commensurate with the representatives' time and effort are appropriate" and approving incentive awards of $12,000 to each class representative); *Meijer*, 2006 WL 2382718, at *25 (approving incentive award of $25,000 to lead plaintiff); *In re Remeron-End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011, at *33 (D.N.J. Sept. 13, 2005) (approving $30,000 award); *Nichols*, 2005 WL 950616, at *24 (approving incentive awards of $2,500 to each consumer representative and $10,000 to each third party payor representatives); *Terazosin*, No. 99-MDL-1317, slip op. (Exhibit H hereto) ($45,000 to one plaintiff; $30,000 to another); *Linerboard*, 2004 WL 1221350, at *1 (approving $25,000 to each representative of the classes); *Godshall*, 2004 WL 2745890, at *6 ($20,000 to each of two plaintiffs with $1.125 million settlement fund); *In re Residential Doors Antitrust Litig.*, MDL No. 1039, Civ. A. Nos. 94-3744, 96-2125, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (Broderick, J.) (approving $10,000 incentive award to each of four named plaintiffs).

Accordingly, plaintiffs respectfully request that the Court grant plaintiffs' requested incentive awards of $10,000 to each of the Class Representatives.

## CONCLUSION

For the foregoing reasons, plaintiffs and Class Counsel respectfully request that the Court enter an Order granting their motion awarding the requested attorneys' fees and expenses, authorizing Class Counsel to distribute the attorneys' fees in a manner which, in the opinion of Class Counsel, fairly compensates each firm in view of its contribution to the prosecution of Plaintiffs' claims, and awarding incentive fees to the six Class Representatives.

Date: September 9, 2009          Respectfully submitted,

**BOLOGNESE & ASSOCIATES, LLC**

By:      /s/Anthony J. Bolognese
         Anthony J. Bolognese
         Joshua H. Grabar
         1500 JFK Blvd., Suite 320
         Philadelphia, PA 19102
         Telephone: (215) 814-6750
         Facsimile: (215) 814-6764
         E-Mail:  abolognese@bolognese-law.com

**BERGER & MONTAGUE, P.C.**

By:      /s/ H. Laddie Montague, Jr.
         H. Laddie Montague, Jr.
         Ruthanne Gordon
         1622 Locust Street
         Philadelphia, PA 19103
         Telephone: (215) 875-3000
         Facsimile: (215) 875-4604
         E-Mail: hlmontague@bm.net

**HAUSFELD LLP**

By:      /s/ Michael D. Hausfeld
         Michael D. Hausfeld
         William P. Butterfield
         1700 K Street, N.W., Suite 650
         Washington, DC 20006
         Telephone: (202) 540-7200
         Facsimile: (202) 540-7201
         E-Mail: mhausfeld@hausfeldllp.com

**FREED KANNER LONDON
& MILLEN, LLC**

By:     /s/ Steven A. Kanner

Steven A. Kanner
William H. London
2201 Waukegan Road, Suite 130
Bannockburn, IL 6001
Telephone: (224) 632-4500
E-Mail: skanner@fklmlaw.com

*Class Counsel for Direct Purchaser Class Plaintiffs*

## CERTIFICATE OF SERVICE

I, Anthony J. Bolognese, one of the attorneys for plaintiffs, hereby certify that on September 9, 2009, I caused a true and correct copy of the foregoing to be filed electronically and served electronically pursuant to the Court's orders in the captioned matters.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/Anthony J. Bolognese
Anthony J. Bolognese
